June 6,
  1933.

EDWARD J. BLANCHARD *v.* BOSTON & MAINE RAILROAD, *& a.*

*Henry P. Callahan,* for the motion.

*Demond, Woodworth, Sulloway & Rogers,* opposed.

Peaslee, C. J. The right to appeal from an order for the discontinuance of a street railway, is limited to interested parties. The only interest alleged to have been infringed by the order is that of the public. The adverse party to the railroad in the proceeding here involved is the state. *Boston & Maine Railroad* v. *State,* 77 N. H. 437, 438. It follows that the proponent of the present motion is not a party entitled to appeal from the order which has been made. Having no right of appeal, he cannot maintain the present proceeding. By the terms of the statute the right to seek the suspension of an order of the commission is given only as an incident to proceedings for an appeal. P. L., c. 239, ss. 19, 22.

This conclusion is made clear by the consideration of certain provisions of the statute. The original act in terms limited the right of appeal to "any party in interest." Laws 1911, c. 164, s. 17 (b). Although this section was substantially altered in 1913 (Laws 1913, c. 145, s. 18), "The material changes there made, however, are in the tribunal, substituting the supreme court for the superior court, and in the form of the procedure." *Grafton &c. Company* v. *State,* 77 N. H. 490, 500. "The substance and scope of the appeal are unaltered." *Ib.,* 499.

In harmony with this is the provision as to the admission of additional parties in the supreme court. The description is here more specific than in the original act. The parties are those "whose rights may be directly affected by said appeal." P. L., c. 239, s. 6. This however means no more than the briefer statement in the earlier statute. It has long been the law in this state that, in proceedings before the county commissioners for the laying out of a highway, "As the right of appeal is not given to 'any person', or to 'any taxpayer,' ... but only to 'any person aggrieved' (P. S., c. 68, s. 2) it must be understood that the legislature intended to give this right to those persons only who were interested in or affected by the proceedings in some manner differently from the public, citizens, and taxpayers generally. ... The plaintiffs have alleged nothing distinguishing their right and interest from that of other citizens and taxpayers." *Bennett* v. *Tuftonborough,* 72 N. H. 63, 64. The earlier cases are there collected. The rule was reaffirmed in *Lane* v. *Keene,* 74 N. H. 599, and has frequently been recognized. *Worthen* v. *Railroad,* 77 N. H. 520; *Worthen* v. *Kingsbury,* 84 N. H. 304.

The idea that no single individual is entitled to demand the right to represent the public in proceedings originally prosecuted before the commission finds further confirmation in the provision regulating

the institution of proceedings against a public utility for the revision of rates, etc. When such a complaint is filed by private parties they must be "customers or subscribers" and they must be of sufficient number to indicate some public demand. There must be "not less than one hundred . . ., in cities of thirty thousand or more inhabitants, or of not less than fifty in cities of twenty thousand or more inhabitants, or of not less than twenty-five in any other city or town." P. L., c. 238, s. 5. This careful limitation of the right, when thus conferred upon some individuals, shows the legislative understanding in two aspects. The right does not exist, except by express statutory provision; and when granted it should be so limited as to exclude action prompted by individual whim or private opinion. The same conclusion has been reached in other jurisdictions, where there are comparable statutory provisions. *State* v. *Company*, 146 Minn. 247; *Page* v. *Commonwealth*, 157 Va. 325.

In the similar situation, where there is a question as to title to a public office, it is the law of this state that a private party cannot assume the public function of instituting and carrying on *quo warranto* proceedings. *Meehan* v. *Bachelder*, 73 N. H. 113. There, as here, the rule is that the public interest is to remain "under the control of such eminent legal ability as the state is able to command in the person of its principal prosecuting officer." *Osgood* v. *Jones*, 60 N. H. 543, 549. The court there refused to permit a private party to contest the title to a public office on a bill in equity brought by him, and said: "By refusing to sanction this innovation upon the ancient mode of proceeding, we believe the result will be on the one hand to discourage unnecessary litigation, and on the other that not only public but individual rights will be fully protected." *Ib.*

The practical reasons for denying to individuals or groups of individuals authority to represent the public interest are too strong to imply a legislative grant of the authority. If one individual or group might thus act, another would have the right to appear claiming a contrary public interest, and both without regard to that interest as represented by the authorized officials or agents of the state. It would lead to a position where the tribunal might be required in effect to review the judgment of those representing the state's interest and thus amount to a supervision of their action. When the state, by those having its authority, takes either a positive or neutral position in respect to the public interest, it determines what the claim of public interest is.

But it is argued that as the record shows the proponent of the mo-

tion to be a party before the commission, he is entitled to appeal under the statute according that right to "any party to the action." P. L., c. 239, s. 1. The question of the propriety of admitting parties in actions in court is a reviewable one. It could hardly be otherwise, and such has been the uniform practice. *School District* v. *Carr*, 63 N. H. 201. The question has been raised for the first time in the law court. *Dorr* v. *Leach*, 58 N. H. 18. The action of the commission in treating this individual as one entitled to the rights of a party is subject to revision here.

One not having the rights of a party is frequently permitted to appear for limited purposes as *amicus curiae*. But he does not thereby become a party entitled to control the course of the litigation. His function is merely to make useful suggestions to the court. "That term, in its ordinary use, implies the friendly intervention of counsel to remind the court of some matter of law which has escaped its notice, and in regard to which it appears to be in danger of going wrong. It is not ordinarily the function of the *amicus curiae* to take upon himself the management of a cause." *Taft* v. *Company*, 56 N. H. 414, 416. The authorities appear to be uniform to the same effect. They are collected in 2 C. J. 1325.

In so far as the course of procedure before the commission went beyond this limitation, it was either an attempt to confer upon this individual a right which he did not possess and which the commission could not confer, or a permission to proceed in a situation where such leave would be denied in a court of law. As to the latter proposition, it may be that in the exercise of the broad powers in matters of procedure before them, which are conferred upon the commission (*Page* v. *Commonwealth*, 157 Va. 325), they have authority to disregard established court procedure and the generally recognized rights of legitimate parties litigant. As to that no decision is necessary. Assuming that such power exists, it is no more than authority to regulate the hearings before that body. It does not extend to conferring upon any one rights of appeal, or rights to have orders made in his favor, beyond those provided in the statutes.

*Motion denied.*

All concurred.